Honorable members of the court, good morning. My name is Dick Sendesich, S-I-N-D-I-C-I-C-H, and I will be presenting the argument in support of RE-MAX's appeal. Firstly, I'd like to note that we have never contended that the district court does not have the judicial discretion to sanction attorneys for the failure to follow local court rules. It is our contention, however, that power must be judiciously exercised, and while that exercise may in fact be proper under certain factual circumstances, given that equities vary with the particular and peculiar facts of each case, it is equally true that in certain circumstances that exercise of the judicial discretion may in fact become abusive or, put another way, unjustified in the facts of the case. In this particular case, it was a summary judgment motion which was granted by the district court after having struck the opposition papers from the record and refused to consider that opposition in entering its decision, which in fact resulted in a summary judgment in favor of Maxum Insurance Company. At the time that the court made that order, it specifically stated that it would be, quote, disinclined to accept any explanation for RE-MAX's late filing except exigent circumstances. By denying of – by the granting of Maxum's motion on the base of summary judgment based solely on moving papers, we believe that the district court created the very extraordinary circumstances which this court should now consider in ruling on disappeal. Well, how many chances does the court have to give a party to comply with the rules? This wasn't the first episode, was it? Well, you're – no, basically, you're on your right. It wasn't the first episode. How many strikes do you get? Well – Three? I don't know if you – I'm not saying that the court can't do anything about it. You're saying it's an abusive discretion. I don't know what's abusive about it. If the party's been warned once, be timely. And the very next time it comes around, the party managed to be late again. Well, Your Honor, I think that if you look at the circumstances of this particular case, and this particular case being an insurance bad faith case, there are issues which need to be considered prior to making a determination as to whether or not summary judgment should be appropriate. Well, I mean, there's some irony in that the underlying argument has to do with the timeliness of notice. And what we have in front of us right now, this issue is the untimeliness of papers. I mean, the real question is whether this party's timely to anybody. Well, Your Honor, again, our argument is that before – we believe that before the court takes the step of striking opposition to a summary judgment, which in effect is tantamount to a default judgment, and since the law specifically states that trial on the merits is more appropriate – What makes this an abusive discretion? I mean, obviously on the theoretical level, you can see that the court has some power to enforce its rules. And suggested in this instance, even though it was the second time around, and even though the party was specifically warned by the court to be on time, there's sufficient justification that the court's sanction was an abuse. Why? Well, the reason why, Your Honor, is that in order to, I believe, fairly and fully adjudicate an issue involving insurance bad faith, one has to consider more than just the moving papers of the insurance company, that if you're going – No, no, no. Let's focus specifically on the court's order that you're objecting to in this part of your argument, that is, the decision to strike the opposition. The opposition was late. The party had been warned by the court not to be late again, to comply with the rules. What justification is there for saying in this case the court's power to enforce the rule, which you've acknowledged is actual enforcement, was an abusive discretion? I'm not saying what's the underlying dispute. That acts like the rule doesn't count. Why should the violation of the rule for the second time be excused in this instance? I'm not saying it should be excused. Then what do you have to tell us about the court's sanction? The court struck the papers. You admit that the court has the power to do so, and you don't give us any reason for why the papers were late a second time. So why is it we should hold that to be an abusive discretion? Because you think the underlying dispute is important. Well, perhaps. But that means the rule doesn't exist, that everybody's entitled to flout the rule twice. Well, I think that it was an abusive discretion for the simple reason that if we look at what happened, that in fact the papers were in fact two days late. There's a wealth of authority which was cited in the brief where under certain circumstances and certain factual situations, which was argued in the brief, that that perhaps might be too strong of a punishment. I agree. But you haven't given us any factual situation in this case that suggests why it's too strong, other than, gee, we didn't get to give our defense. I mean, there's nothing to explain why the lateness, no extraordinary circumstances, no exigent circumstances, nothing that I've heard so far. And otherwise the rules become a negotiating position. The court, well, maybe you can enforce the rule, but only if it really doesn't make any difference in the end, which doesn't make it much of a rule. Is there anything about this case that would justify or explain why the papers were late? Unfortunately, I mean, I wasn't part of the case. I understand that. And none of this is aimed at you. I understand that. It's just the reality of either the rules are going to be enforced and the court can do something to move its docket along or they're not available and the court can negotiate. And I think those are the reasons. Well, Your Honor, if you track through the factors of what the court should consider in terms of whether or as to what sanction to be imposed, the papers were only two days late. There was a timely, the response was on time. The court's docket wasn't affected in any way whatsoever. The motion for summary judgment still could have gone on. So if you take these factors together, which was argued in the brief, that if you look at the circumstances that they were two days late, the reply papers from REMAX were timely filed. That didn't impede the court's ability to hold a summary judgment motion to the time it was originally scheduled. The court, in fact, continued that date to a subsequent date. What you're leaving out of your example is that the court had warned, don't be late. Doesn't that end the equation when we're looking at it and we decide whether to do it? Well, you're absolutely right, Your Honor. The court said don't be late, but the court did not say don't be late or I'll strike your papers. It didn't say don't be late again, which it could have said, couldn't it, on this record? It said, basically it said next time file them on time. Right. And they were not filed on time, but at the time that the court gave that warning to counsel, it didn't say if you do that, I'm going to strike your papers. There's other remedies the court could have used to sanction the attorney for violating those rules, including monetary sanctions. This particular sanction resulted in a case being dismissed, basically without having any of the merits considered. I think that's the same thing.  If you're going to dismiss a case, you have to get the merits considered. By striking the papers under summary judgment rules, all deference is supposed to be given to the nonmoving party with respect to what is an undisputed fact. Let me let you get to the underlying issue. And I think there's a question there, too. How is it that the notice given by the insured wasn't late? That seems to me the most important underlying issue. Did the insured give timely notice to the carrier? Did the insured give timely notice to the carrier? This is a claims made policy, and there's supposed to be notice given to an insured. Correct. But under the California insurance code, in particular California insurance code section 554, it provides that the delay in providing a notice of claim may be waived if the insured omits to make a prompt objection on that ground. The first time they raised the objection about timeliness was under summary judgment. Yeah, but how much time had passed? They were supposed to give a notice on do you know the exact time they were supposed to give a notice? 30 days. 30 days. When did they give it? That's the disputed fact. The disputed fact is that REMAX is arguing they didn't get notice until June. They're saying that they gave notice in May, albeit still late. But again, if you look at it. Whether it's May or June, it's still several months after the claim surfaced. That's correct, Your Honor. But in the case Root, which was cited at length in our brief, is that under equitable circumstances, particularly if you look at insurance code 554 and the Root case, which specifically says that the court exercising equitable powers can actually not enforce that clause. The reason being is that a claims-made policy has nothing to do with the risks covered under the policy. It's more of an internal policy to help the insurance company with respect to being able to close its claims timely and to, in fact, go and figure out how much reserves they have to set aside to protect their other insurers. Well, I don't know that the time of the notice requirement is purely about closing books. I mean, one thing is the insurer wants to be able to respond promptly to the situation. In this case, the parties not only negotiated, but there was a mediation that took place before the insurance company ever knew about it. I mean, wouldn't the insurer want to do a participated and there's going to be negotiations to try to resolve the claim only to be presented with a claim after those negotiations have failed seems to me to be a departure from the notice requirement. Well, again, if one basically in the opposition papers which were struck, there was a disputed fact as to whether or not that when in fact that mediation took place. But there wasn't a dispute that took place long before the 30 days, right? That is correct, Your Honor. So let me just ask you, getting back to the papers that were struck, did the papers that were struck raise a genuine issue of material fact? Was there a material dispute about the timing of the various letters from you and the like? Well, Your Honor, basically there was a dispute as to when the notice was given. But looking at it in the terms strictly of an insurance bad faith claim, the moment that RIMAC, I strike that maximum, issued its notice of denial on June 11, 2007, it specifically said the reason that they were denying it because it wasn't insured under their coverage period. The law is clear on that point is that once an insurance company disavows the policy, it can't come back later and start saying, wait, we're not covered under something else. Well, did they know about the letters from you at that point when they responded to your notice? Had you informed them about those letters making a claim? Well, as of June 11, 2007, it's undisputed that they had notice of the claim. They had notice of the claim. Had they been made aware by your client of the letters that had been received in January and February 2007? I believe that the documents were included in the submission to the insurance company. Again, there's nothing that I'm aware of which actually points to what exactly was given over to RIMAC, but the long and the short of it. You mean to MAXIM? That's right, to MAXIM. I'm sorry. Well, we know the letters came in. The claim letters from Mr. Yu came in January, February. There were three of them. And there's some dispute as to when notice was given to the carrier, but it's clear that we're talking about the May and June territory, right? Your Honor, but I would like also to point out that even though RIMAC contracted for this policy of insurance on December 22nd of 2000 for a policy of insurance covering the period of December 22nd, 2006 to December 27th, 2007, they did not get a copy of that policy until sometime after mid-February. And so if we're talking about what obligations RIMAC set under the policy with respect to January letters or early February letters, how were you supposed to know? Because, again, RIMAC, they didn't have a possession of that extant policy at the time those letters came in. And that's basically part of the deposition transcript, which was submitted as part of the opposition papers, where the person most knowledgeable for the underwriters and insurance carriers that actually brokered the policy for RIMAC said, well, you know, we looked in our records and they said we didn't have the policy, so we called RIMAC. And we received it sometime after mid-February. And I've got the citation for that. Well, you've got about a half minute left. Do you want to save it for rebuttal and you can come back with the citation? Well, Your Honor, I'll come back with the citation. Thank you. Good morning. Gus Roberts on behalf of Maxim Insurance Company. I'd like to start by stating that the letters that we were just discussing a few minutes ago were not included in the original packet that was sent to my client. In fact, when we were tendered with the complaint in May, that's all we were tendered with. We weren't tendered with any of the exhibits to that particular complaint, which would have included the real estate agreements and that sort of thing. And, in fact, it was almost another year. It was April of 2008 when the Second Amendment complaint was filed. They didn't tender the Second Amendment complaint. They tendered the First Amendment complaint. And so we still didn't know about these letters until discovery in the bad faith case. That's when we found out about them. So may I explain why, when the carrier responded to the first submission, it did not identify as a basis for denying coverage, reserving rights, whatever? Untimely notice? In the first submission, Your Honor, the complaint that was sent was responded to four or five days later with a line that discussed that the predicate negligent acts occurred before the policy went off the wrist on December 22nd and then had the reservation line saying, if we learn anything further. So at that time, the issue identified by the carrier's letter, and I've now forgotten whether it was a reservation of rights denial or coverage, whatever form it took, denial, had to do with the circumstances preceding the effective date of the policy. That's correct. Subsequently, the policy coverage concern evolved to the untimeliness of notice. Is that correct? That would have been during the bad faith case. That's correct. In terms of getting the policy itself as well, in February, it's typically, you know, in insurance, a person goes to their retail broker and that retail broker goes to a wholesale broker and that wholesale broker buys it from the insurance company. There's very, very rarely a direct link between the consumer and the insurance company. So typically, the responsibility for who has the policy, the complete set of policy, is the broker's responsibility, not Maxim. So would ReMax have had a binder or what evidence would they have had? Yeah, they would have had a binder. Their broker would have had to show them something, presumably, when he sold them the policy. I take it this is a standard form policy. There would have been a specimen policy or something available? Standard form claims. Yeah. At risk of going over some old ground here, it's our belief that the judgment entered by the court below was not an abuse of discretion. The standard of review for court striking the papers of the appellant under Local Rule 712 is an abuse of discretion. 712 allows the court to decline to consider papers not filed within deadlines set by the court. You've already indicated the court did warn and actually specifically warned about filing papers late. This is in trial court's inherent power to control the stocket. The appellant was given fair warning. He never did ask the court for an extension of time, and, in fact, at the same time he filed late papers, he also filed a motion to strike, which was filed in violation of rules as well. Now, in that sense, for this particular set of papers, they were filed two days late. Is that correct? Two and three. There were some papers that were filed a few days late, and then there was something. And this could have been a timing issue with the e-filing that came on the docket. Then actually the next day we could have made it three days. But in essence, you're correct. And did that have an impact on your client's ability to file? It did not. Reply papers. The court took the matter up on the same schedule it was originally established. I guess the court at that point struck the papers. It struck the papers, and I do have the timeline. The court moved the hearing date, I don't think as a result of this lateness, not once but twice, and then had an order saying no oral argument was necessary. And that occurred a couple, six or eight weeks later. Was there any prejudice suffered as a result of the late papers? None that I'm aware of, Your Honor. You know, to be fair, in the opposition papers, in the underlying case, particularly to the motion for reconsideration, there's some discussion with the partner that worked on this case, in the underlying case, about prejudice. But it appears if everything went forward on time, it probably worked out okay. Looking at prejudice another way, what items in the opposition paper were not considered by the district court? So the opposition was struck. Was there a genuine issue material fact identified that would have made a difference? Was there a legal argument that the district court didn't address? And that's certainly salient to this issue. I looked at it a couple different times in the course of preparation here, and it seems like while the moving party does have the burden, there's no responsibility on behalf of the answering party to answer anything. If I didn't meet my burden, I don't get summary judgment. I apparently met my burden. And in particular with the 30-day notice issue, and going down the list of the February 2nd letter, the February 7th letter, the March reply, there really isn't any factual dispute as to whether or not RE-MAX knew or not. The attorneys, Mr. Yu's attorneys, received responses from RE-MAX counsel indicating they realized it was a mediation. Mr. Yu's attorneys filed declarations saying there was, in fact, a failed mediation. Counsel for RE-MAX in the underlying matter, excuse me, Principal for RE-MAX in the underlying matter indicated that she wasn't sure if there was or not. That's not a material fact. That doesn't rise to a material fact. If it's anywhere, it's on those declarations. The declarations don't make it. And I think under Martinez, et al., we carried our burden, and the judge so found. They then moved into a motion for reconsideration. And recall it was brought under 59E, and the underlying court ruled under 59E not, and as a motion for reconsideration, not under Rule 60, excuse, surprise, neglect. And so the standards that come up under Rule 60 are completely different. That's not what the trial court was given, and that's not what the trial court ruled on. As I'm sure you're aware, there's 29th Circuit cases on this issue. Reconsideration is an extraordinary remedy. It requires newly discovered evidence, clear error, intervening change in law. There's a local central district rule, 718, that sort of mirrors the federal rule of civil procedure. None of those were met. And so the motion for reconsideration under 59E was denied. Judgment was entered in early January. And here we are. There is issues involving the motion for similar judgment that I would be happy to respond to. I know there's a little bit more to this case than at first meets the eye. I'd be happy to answer any questions. I do have six or so minutes left. Doesn't appear we have any. Thanks very much, Mr. Chairman. Thank you. Mr. Sandich. Thank you very much, Your Honor. That citation, it would be in Supplemental Excerpts of Record, Volume 7, page A001500, where there's a colloquy during the course of the deposition where it's asked when they got – when the broker actually received the policy from the insurance carrier. And he said it did not arrive until mid-February. And that would be on that page that I referenced, lines 5 through 8. Your Honor, I'd just like to draw the Court's attention to an argument in Root, which was in our supplemental reply brief. And basically, it specifically states that there are certain equities that are extant in insurance bad-faith cases, which in and of themselves are factually intense, and because of their nature makes the granting of a summary judgment in an insurance bad-faith case very difficult on the part of the insurer. That's our argument that in a particular case like this where the insurance company has a duty of good faith and fair dealing towards the client, to exclude those portions of the argument from consideration, which would establish that as a group, that the bad faith of the insurance company began at the time of the initial denial letter, not to go into those facts which would have got those equitable circumstances, which the Court did not consider and I think should have considered, there might have been a different outcome. Thank you very much. Thank you. We thank both counsel for the argument. The case just argued is submitted.
judges: Farris, Clifton, Ikuta